IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BENJAMIN ORR WHITE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UNITED STATES ATTORNEY GENERAL, *et al.*,<br><br>　　　　Defendants. | Civil No. 24-00170 MWJS-WRP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND |

## INTRODUCTION

Plaintiff Benjamin Orr White is an American citizen. He married Rynalen Baya Policher, a citizen of the Philippines, in March 2023. White then filed a petition to allow his spouse to live with him in the United States. All needed documentation was complete as of May 2024. But in the five months since, the State Department has not scheduled a visa interview for Policher with a consular official. Policher therefore remains outside the United States. Proceeding pro se, White alleges that the scheduling of his spouse's visa interview has been unreasonably delayed.

Defendants now move to dismiss White's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. They argue that courts may not second-guess how the State Department deploys consular resources, and that, in any event, there has been no unreasonable delay here.

No delay of any length would be acceptable to a person waiting for the chance to reunite with their spouse in the United States. But some delays are simply a common feature of the administrative state, and a five-month delay in scheduling a visa interview falls well below what courts have found to be unreasonable. For these reasons, explained more fully below, the Court GRANTS the motion to dismiss with leave to amend.

## BACKGROUND

### A.   Spousal Visa Process

"To be admitted to the United States, a noncitizen typically needs a visa," and "[v]isa decisions are made by the political branches." *Dep't of State v. Munoz*, 144 S. Ct. 1812, 1818 (2024). Congress has "streamlined the visa process for noncitizens with immediate relatives in the United States," *id.*, but even that streamlined process remains cumbersome.

When, as here, a noncitizen spouse has "not yet been lawfully admitted to the United States and must therefore apply from abroad," *id.* at n.1, the U.S. citizen seeking a spousal visa must first submit a Form I-130 Petition for Alien Relative (I-130 petition) to the U.S. Citizenship and Immigration Services (USCIS), an agency within the Department of Homeland Security (DHS). *See* 8 U.S.C. § 1154(a); 8 C.F.R. § 204.1(a)(1); 8 C.F.R. § 204.2(a). The USCIS first reviews the petition to determine whether the noncitizen beneficiary has a qualifying relationship with the U.S. citizen. If the USCIS

approves the petition, it then forwards the petition to the State Department's National Visa Center (NVC).

At that point, the NVC reviews the petition for pre-processing.  *See* U.S. Dep't of State, Bureau of Consular Affs., *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html [https://perma.cc/7TS8-Z8UD].  The NVC gathers documentation from the noncitizen and, if it receives the required information and fees, marks the case as documentarily complete.  Then, the U.S. embassy or consulate in the region where the noncitizen lives is tasked with scheduling an immigrant visa interview before a consular officer; at that interview, the noncitizen makes and executes a visa application.  *See* 8 U.S.C. §§ 1201(a)(l), 1202(a) & (b); 22 C.F.R. §§ 40.1(l), 42.61 (Place of application), 42.62 (Personal appearance and interview of applicant).  Once a visa application is so executed, the consular officer must issue the visa or refuse the visa application.  *See* 8 U.S.C. § 1201(a) & (g); 22 C.F.R. §§ 42.71, 42.81.

  **B.**  **The First Amended Complaint's Factual Allegations**

As alleged in the FAC, White is a U.S. citizen and a civilian employee of the Department of Defense who lives in Hawaiʻi.  ECF No. 21, at PageID.95.  He met his spouse, a citizen of the Philippines, in September 2021, and they married in March 2023.  *Id.* at PageID.95-96.  In June 2023, White filed an I-130 petition to allow his spouse to join him in the United States.  *Id.* at PageID.97-98.

3

White alleges that at the time he filed that petition, he was advised that the wait time was expected to be eight to ten months. *Id.* at PageID.98. In November and December 2023, White followed up on the petition's status by contacting the U.S. Attorney General, the U.S. Attorney for the District of Hawaiʻi, U.S. Representative Ed Case, U.S. Senator Brian Schatz, the DHS and USCIS Contact Center, and the State Department. *Id.* at PageID.98-101. But as of April 2024, the anticipated wait time for his I-130 petition allegedly had increased to twenty-six months. *Id.* at PageID.98.

In May 2024, the DHS approved White's I-130 petition and the process shifted to the State Department, the agency responsible for issuing Policher's visa. *Id.* at PageID.100. The NVC received the petition and on May 28, 2024, marked Policher's case as documentarily complete. *Id.* & *id.* at PageID.97 n.2. But the U.S. embassy or consulate allegedly has not yet issued an interview date for White's spouse. *Id.* at PageID.100. White filed this action in September 2024, alleging that the delay in scheduling an interview is unreasonable.

White names several defendants: the U.S. Attorney General, the U.S. Attorney for the District of Hawaiʻi, and the Secretaries of DHS and the State Department. White claims that each defendant has "ignored federal law and failed to perform their duty to process immigration petitions in a reasonable amount of time." *Id.* at PageID.96. And he contends that in particular, the State Department "has become the difficult party and federal law does not afford the Defendant's [sic] with an excessive amount of time to

4

process Plaintiff's visa and green card." *Id.* at PageID.98. In his complaint, however, White does not identify any law that requires consular officers to schedule interviews within a specific amount of time. His focus, instead, is on the fact that the government has taken longer than its own estimates would have suggested. *See id.* at PageID.98 ("[I]n June 2023, USCIS estimated that processing [for the I-130 petition would] . . . be 8-10 months and now in April 2024 the time of the same processing has increased . . . to be 26 months . . . In less than a year the time for processing these petitions has more than doubled which is <u>not</u> . . . a reasonable amount of time.").

White therefore requests that the Court grant declaratory relief and order the defendants to expedite the immigration process for his spouse. *Id.* at PageID.101. These tasks include "scheduling an interview date, conducting an interview with Plaintiff's Spouse, and issuing a Spousal Visa," in addition to "assisting DHS" with any Green Card issues so that his spouse can travel to Hawai'i, and be authorized to live and work here permanently. *Id.*

   C.   **Defendants' Motion to Dismiss**

Defendants now move to dismiss the FAC under Rule 12(b)(6) for failure to state a claim for relief. ECF No. 23. White opposes dismissal. ECF No. 25. The Court elects to decide the motion without a hearing under Local Rule 7.1(c).

//

//

## DISCUSSION

A.   **Rule 12(b)(6) Standards**

Under Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But these pleading standards, liberal as they are, "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). It is not enough for a claim to be merely "conceivable" based on the alleged facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Id.* at 545.

B.   **White's Complaint Does Not Satisfy Rule 12(b)(6)'s Standards**

In his FAC, White alleges that waiting slightly more than five months for a visa interview for his spouse is unreasonable. *See* ECF No. 21, at PageID.97 n.2. The Court agrees with Defendants that the FAC fails to state a claim for relief because White has not plausibly alleged that his spouse's visa interview has been unreasonably delayed.[1]

---

[1]   In their motion to dismiss, Defendants also raise a more sweeping argument: that there is no claim for relief regardless of how long the scheduling of a visa interview is delayed, "because the allocation of consular services, of which visa services are a part, is committed to the discretion of the State [Department] and Congress has not

     1. The Court must first determine the proper standard for reviewing the alleged agency delay. White requests that this Court "order for the Defendants in this action to immediately process and complete the Plaintiff's petition(s) for a determination to immigrate and for Defendant, State [Department] to complete their legacy task(s)." ECF No. 21, at PageID.101. There are two ways his claim could be construed: either as a writ of mandamus or as an action under the Administrative Procedure Act (APA). Under either standard, a court may compel government action. As to the former, district courts have original jurisdiction over mandamus actions in which a plaintiff asks the court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. As to the latter, the APA provides that a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

     White does not indicate which statutory authority his claim rests upon, and the Court construes his pro se pleadings liberally to raise the strongest argument they might suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is

---

mandated that [the] State [Department] schedule a noncitizen for an interview to make a visa application within a time certain." ECF No. 23-1, at PageID.182-83; *see also id*. at PageID.187-92. Because the Court concludes that White has not stated a claim for unreasonable delay on the facts of this case, it need not rule on the broader argument that such a claim is never sound. *See Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6 (D.D.C. 2021) (declining to rule on the government's argument that consular officials' decisions are immune from judicial review because the court dismissed the action for its "failure to state a claim of unreasonable delay").

7

to be liberally construed.") (citation omitted).  But here, the standard is the same regardless of how White's claim is construed:  claims seeking mandamus for agency actions are treated, "in essence," as actions for relief under the APA.  *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 n.4 (1986)) (explaining that relief "in the form of mandamus" is "essentially the same" as "relief under the APA").  The Court therefore will analyze White's entitlement to relief under the APA.

2.  Under the APA, all agencies must address "a matter presented" to them "within a reasonable time."  5 U.S.C. § 555.  And under § 706(1) of the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

In considering whether an agency's delay is unreasonable, the Court must consider six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Indep. Min. Co.*, 105 F.3d at 507 n.7 (cleaned up).  These six factors are commonly referred to as the "*TRAC* factors," after the case in which they were announced.  *Telecommc'ns Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ("*TRAC*").

        a.  The first *TRAC* factor, the "rule of reason," weighs decisively against White's claim.  Under this factor, courts "consider whether the time for agency action has been reasonable."  *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020).  Here, the challenged action is the pace of the State Department's scheduling of an interview with a consular official.  This request implicates the broad authority of the Secretary of State to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of the Department of State," 22 U.S.C. § 2651a, as well as the broad authority of Chiefs of Mission to manage consular resources, 22 U.S.C. § 3927.  So a plaintiff would need to make an especially strong showing that the timing of the State Department's action, or lack thereof, is unreasonable, before a court would intervene in the State Department's discretionary allocation of such resources.

    In considering such a claim, courts "typically assess a delay in scheduling a visa interview from the time the application was documentarily complete and the relevant embassy could have scheduled the interview."  *Ghalambor v. Blinken*, No. CV 23-9377, 2024 WL 653377, at *4 (C.D. Cal. Feb. 1, 2024) (cleaned up).  And while *any* delay in scheduling the visa interview is surely painful to White and his spouse, the delay to date has not been legally unreasonable.  At the time White filed this case in September

9

2024, there had only been a four-month waiting period since May 28, 2024, when Policher's case was deemed documentarily complete. ECF No. 23, at PageID.195. That delay has now become slightly more than five months. Even taking the allegations presented in White's complaint as true, a five-month wait for a visa interview with a consular officer is not legally unreasonable. *See, e.g.*, *Ortiz v. U.S. Dep't of State*, No. 1:22-CV-00508, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) (finding a nine-month delay in scheduling a visa interview after a noncitizen's I-30 petition was approved was not unreasonable); *Poursohi v. Blinken*, No. 21-CV-01960, 2021 WL 5331446, at *6 (N.D. Cal. Nov. 16, 2021) (holding that in the context of scheduling an immigrant visa interview for an I-130 after the application was documentarily complete, an eighteen-month wait did "not by itself indicate an unreasonable delay"); *Tenorio v.* Bitter, No. EDCV 23-1581, 2024 WL 2873754, at *4 (C.D. Cal. May 1, 2024) (finding a delay of seventeen months in scheduling a visa interview after approval of I-130 petition not unreasonable).

White insists that dismissing his complaint before any discovery has been conducted would be premature. But the length of delay, at this point, is simply not enough to warrant "unlock[ing] the doors of discovery." *Iqbal*, 556 U.S. at 678-79. Courts in the Ninth Circuit generally have found that immigration-related delays of four years or less are not unreasonable, but that delays of more than six years may be. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 929 (C.D. Cal. 2014). And cases in which courts

declined to find that delays were reasonable at the motion to dismiss stage involved delays significantly longer than that at issue here. *See, e.g.*, *Gonzalez v. Paul*, No. 3:20-CV-00971, 2021 WL 6119256, at *11 (D. Or. Apr. 8, 2021) (denying motion to dismiss in the face of a fifty-two-month delay).[2] Here, by contrast, it is entirely appropriate to conclude, at the motion to dismiss stage, that a five-month delay in the scheduling of a visa interview with a consular officer is not unreasonable. Such a delay is not enough to "nudge[]" White's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

White also suggests that "[t]his Court should seek clarification from defendant Department of State as to why" there is a significant variance between the timeline for issuance of citizens' passport applications and White's visa petition. ECF No. 25, at PageID.220. But there is an obvious and material distinction between these two processes—passport services are provided to those who are already U.S. citizens or have a qualifying national status, whereas immigrant visas are issued to noncitizens based on a series of requirements under the Immigration and Nationality Act. The fact

---

[2] To be sure, plaintiffs sometimes challenge delays at earlier stages in the process, prior to the involvement of the State Department's consular officers—and as such delays do not involve the management of consular resources, they may become unreasonable more quickly. For example, in *Feng v. Beers*, No. 2:13-CV-02396, 2014 WL 1028371, at *1 (E.D. Cal. Mar. 14, 2014), the plaintiff challenged a 16-month delay in USCIS's processing of an I-130 petition before forwarding to the State Department's NVC. The Court held that a 16-month delay of that USCIS screening stage was enough to preclude a motion to dismiss.

that passports can be issued to U.S. citizens expeditiously does not support the

conclusion that immigrant visas should be issued at the same speed.

Granted, at least some speed is necessary even in the visa context, and were the

delay here substantially longer, the first *TRAC* factor would begin to tip in the other

direction.  At that point, it might be necessary for Defendants to explain why a delay of

seemingly unreasonable length might nonetheless be reasonable under the

circumstances.[3]  And limited discovery over the validity of any such proffered

explanation could conceivably be warranted.  But in this case, given that only a five-

month delay has occurred thus far, there is no reason to delve into possible

explanations because the delay is not unreasonable on its face.  The first *TRAC* factor

weighs decisively in Defendants' favor.

b.  The second factor, whether there is a Congressional timetable outlined

for an agency to adhere to, also weighs strongly against White's claim.

White does not point to any statutory authority that would suggest the

government has an obligation to schedule a visa interview with a consular officer

within a particular timeframe.  And even in the context of other immigration processes

---

[3]     For example, several courts have concluded that "USCIS's 'first in, first out' policy for adjudicating immigration applications . . . qualifies as a 'rule of reason' that satisfies the first *TRAC* factor."  *Kamath v. Campagnolo*, No. SACV2101044, 2021 WL 4913298, at *3 (C.D. Cal. Aug. 13, 2021) (citations omitted).  And here, Defendants argue that the State Department follows a similar approach to the scheduling of its consular interviews.

where statutory language provides that "the sense of Congress [is] that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," *Kamath*, 2021 WL 4913298 at *3 (quoting 8 U.S.C. § 1571), courts have determined that such timeframes do not "establish a mandatory timeline," *id.* (cleaned up). *See also Ortiz*, 2023 WL 4407569 at *7-8 (noting that the same 180-day standard and "sense of Congress language" in 8 U.S.C. § 1571 is "nonbinding"). That is because "Congress has given the agencies wide discretion in the area of immigration processing" and the courts generally defer to that significant discretion. *Kamath*, 2021 WL 4913298 at *3 (cleaned up).

Here, far from identifying any mandatory timeline for scheduling visa interviews with consular officers, White cannot even identify a suggested timeline by Congress. The second *TRAC* factor therefore weighs strongly in favor of Defendants.

      c. The remaining *TRAC* factors favor White somewhat, but they do not tip strongly enough in his favor to overcome the weight of the first two factors against his claim.

The third and fifth *TRAC* factors—a plaintiff's health and welfare interests and the prejudice caused by the delay—weigh in favor of White. As noted in his affidavit attached to the complaint, the delay in processing White's spouse's visa has affected his own mental health, impacted the couple's family planning, and required White to incur expenses in filing this action. ECF No. 25-1, at PageID.244-47. The Court is sympathetic

to "the significant harm and emotional distress resulting from family separation" and the personal and financial hardship imposed on White and his spouse due to this delay. *Tenorio*, 2024 WL 2873754 at *5. But as discussed below, these impacts of the immigration process affect all those similarly situated who are waiting for their immigration decisions. And so where the agency has a duty to serve all noncitizens in a reasonable timeframe, White's interest in the processing of his spouse's visa is not solely dispositive.

As to the fourth factor, the effect of expediting delayed action on agency activities of a higher or competing priority, White has not provided any reason why his spouse's visa interview should be prioritized over others similarly situated. And he has also not alleged any facts suggesting that the State Department is, for instance, unreasonably prioritizing other kinds of visa interviews over spousal immigrant visa interviews. *See Liu v. Denayer*, No. CV216653, 2022 WL 17370527, at *5 (C.D. Cal. July 18, 2022) ("Were the Court to order Defendants to expedite the processing of Plaintiff's application, the effect would be to move Plaintiff to the front of the line and all other similarly situated applicants back."); *Tenorio*, 2024 WL 2873754, at *5 ("[C]ourts have refused to grant relief, even though all the other factors considered in TRAC favored relief, where a judicial order putting an individual at the head of the queue would simply move all others back one space and produce no net gain.") (cleaned up).

14

The sixth and final *TRAC* factor considers whether a defendant has acted in bad faith. Although an agency need not act in bad faith for a court to find that a delay is unreasonable, where "a Plaintiff does not allege bad faith, courts should either ignore this factor or hold that it slightly favors the government without excusing unreasonable delay." *Liu*, 2022 WL 17370527 at *6 (cleaned up). Here, White does not allege any facts that go to bad faith. He notes that he had difficulty serving the complaint on the State Department. *See* ECF No. 21, at PageID.100; *see also* ECF No. 25, at PageID.223. But there is no basis to infer that such actions were intentionally malicious or any different from the State Department's ordinary service process.

*   *   *

Overall, the Court finds that the *TRAC* factors strongly favor Defendants. Although the third and fifth factors favor White slightly, "[t]he first factor is the most important" and the Court finds that as a matter of law, the delay in this case is not unreasonable. *Throw v. Mayorkas*, No. 3:22-CV-05699, 2023 WL 2787222, at *4 (W.D. Wash. Apr. 5, 2023). White therefore fails to state a claim for unreasonable delay under the APA. And it follows that he similarly fails to state a claim for mandamus relief.

3. White's principal counterargument is that under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), this Court must hold a hearing to "evaluate facts and law surrounding the timeliness of the agency action" and therefore his FAC cannot be dismissed on a purely legal basis. ECF No. 25, at PageID.211. He contends that in light

15

of *Loper Bright*, discovery is necessary so that he can show the reason for the agency's delay, and because Rule 26 disclosures have not been exchanged, dismissal of the action would be "premature."  *Id.* at PageID.211-12.

This argument is mistaken.  The Supreme Court's decision in *Loper Bright* did not concern Rule 12(b)(6)'s standards or the propriety of granting a motion to dismiss when a complaint fails to allege sufficient facts to state a claim for relief against an agency.  Instead, the Supreme Court in *Loper Bright* overruled its earlier decision in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), which had provided a framework for deferring to agency constructions of statutory language.  In simplified terms, *Chevron* had provided that when statutory language is ambiguous, courts should defer to a reasonable agency construction of that language.  *Id.* at 865-66.  Overruling that approach, the Court in *Loper Bright* held that courts could no longer "defer to an agency interpretation of the law simply because a statute is ambiguous" but instead must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority."  144 S. Ct. at 2273.

If Defendants were arguing that the Court should defer to their interpretation of a statute—say, for instance, if a statute required the scheduling of interviews within a certain timeframe and Defendants were offering an interpretation of that statute—*Loper Bright* might have some bearing on the resolution of this case.  But as noted above, there is no statute requiring the State Department to schedule visa interviews with consular

officials within any particular timeframe.  White's argument is not based on any specific statutory obligation, but rather on the APA's more general requirement that agency action not be unreasonably delayed.  And in considering whether there has been an unreasonable delay under the APA, the Court has not deferred to Defendants' construction of the APA's requirements.  Instead, the Court has "exercised [its] independent judgment" in deciding, under the *TRAC* factors, whether the agency action here has been unreasonably withheld.  *See id.  Loper Bright* therefore has no relevance to these issues.

### C.     Leave to Amend

The Ninth Circuit has recognized that "the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."  *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992) (cleaned up), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  For that reason, circuit law "is clear that before a district court may dismiss a *pro se* complaint for failure to state a claim, the court must provide the *pro se* litigant with notice of the deficiencies of [their] complaint and an opportunity to amend the complaint prior to dismissal."  *Id.*; *see also Stanley v. Goodwin*, 475 F. Supp.2d 1026, 1033 (D. Haw. 2006) (same).  And while the Ninth Circuit has also recognized that leave to amend need not be given where "the pleading could not possibly be cured by the allegation of other facts," *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

17

1990), leave to amend should be granted where a curative amendment is possible, even if the Court anticipates that a cure is highly unlikely.

There are reasons to believe that White's complaint cannot be saved, should he amend the complaint now. The duration of his wait—while surely heartbreaking for him and his spouse—is likely not long enough at this point to sustain a plausible claim for relief, regardless of what additional facts he might provide in an amended complaint. At most, White could supplement his factual allegations related to the third, fourth, fifth, and sixth *TRAC* factors. But in the circumstances of this case, the first two *TRAC* factors weigh so heavily in Defendants' favor that any such enhancement—at this point—would likely be futile.

Nonetheless, while one might predict that White will be unable to address the deficiencies in the FAC identified in this Order, circuit law weighs in favor of affording him an opportunity to make the attempt. And Defendants themselves do not clearly ask the Court to deny leave to amend this time around. For these reasons, the Court grants White leave to amend.

Any amended complaint—which should be titled "Second Amended Complaint"—must be filed by December 4, 2024, and must cure the deficiencies identified above; that is, White must provide sufficient facts to plausibly support his claim of unreasonable delay under the standards discussed above. White is cautioned

18

that failure to timely file an amended complaint that addresses the identified deficiencies will result in the dismissal of this action.

The Court notes, however, that the merits of White's claim of unreasonable delay could become stronger over time if his wait continues to drag on. Accordingly, should White decide not to file a Second Amended Complaint at this time, the Court's dismissal of the action would be without prejudice to White refiling a complaint at a much later point in the future. *Cf. Yavari v. Pompeo*, No. 2:19-CV-02524, 2019 WL 6720995, at *9 (C.D. Cal. Oct. 10, 2019) ("In this Court's view, only a much longer delay of final adjudication of the waiver can cure the deficiencies in Plaintiffs' Complaint. This dismissal is without prejudice solely to permit refiling on these grounds at a much later date.").

## CONCLUSION

For the foregoing reasons, the Court DISMISSES White's First Amended Complaint.

If White elects to file a further amended complaint, he must comply with the following requirements:

(1) White's deadline to file a further amended complaint is December 4, 2024;

(2) White's further amended complaint should be titled "Second Amended Complaint"; and

(3) White must cure the deficiencies identified above.

White is cautioned that failure to timely file a Second Amended Complaint that conforms with this Order will result in dismissal of this action—though, as noted above, any such dismissal would be without prejudice to his refiling a complaint at a much later date.

    IT IS SO ORDERED.

    DATED: November 4, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00170 MWJS-WRP; *Benjamin Orr White v. U.S. Attorney General,* et al.; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM